UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | )<br>) |
| ELLIPSO, INC. | ) Ch. 11 No. 09-00148 |
| Debtor | ) |
| MOBILE COMMUNICATIONS HOLDINGS, INC. | ) Ch. 11 No. 10-01003 |
| Debtor | ) |
| ESBH, Inc. | ) Ch. 11 No. 10-01000 |
| Debtor | ) |
| VIRTUAL GEOSATELLITE, LLC | ) Ch. 11 No. 10-01001 |
| Debtor | ) |

**TRUSTEE'S MOTION TO AUTHORIZE SUBSTANTIVE CONSOLIDATION OR IN THE ALTERNATIVE JOINT ADMINISTRATION OF CASES**

COMES NOW Wendell W. Webster, Esq. ("Trustee"), the Chapter 11 Trustee in Bankruptcy for Ellipso, Inc. ("Ellipso"), by counsel, and hereby moves this Honorable Court to exercise its equitable powers, as set forth in 11 U.S.C. § 105(a) of the US Bankruptcy Code, to authorize the substantive consolidation of Ellipso's bankruptcy estate with the bankruptcy estates of Ellipso's subsidiaries- Mobile Communications Holdings, Inc. ("MCHI"), ESBH, Inc. ("ESBH") and Virtual Geosatellite, LLC ("Virtual Geo"). In the alternative, Trustee requests

that the Court authorize the joint administration of these estates, pending the formulation of a joint plan of reorganization or a sale of the assets of the estates. In support of this motion, the Trustee represents as follows:

Factual Background

1. Ellipso filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 25, 2009. Ellipso's directors and officers consist of David Castiel (President, Secretary and Director), Richard Burt (Director), and Gerald Helman (Vice President)[1]. On February 5, 2010, Wendell W. Webster, Esq., was appointed to serve as the Chapter 11 Trustee in Ellipso's case.

2. Ellipso is a communications satellite system design company. Ellipso's subsidiaries include, MCHI, ESBH and Virtual Geo. Through these subsidiaries, Ellipso has compiled a portfolio of intellectual property consisting of approximately 22 U.S. patents for various communications satellite systems and related technology.

3. Ellipso currently owns a 20% interest (5,213 shares) in MCHI[2]. See Ellipso's Schedules of Assets and Liabilities, Docket Entry ("DE") 46. MCHI owns a 100% interest in ESBH. See MCHI's Schedules of Assets and Liabilities, DE 1. Ellipso owns a 100% interest (1,040 units) in Virtual Geo. With the exception of Ellipso's ownership interests in its subsidiaries, Ellipso owns no other assets of significant or undisputed value[3]. See Schedule B at DE 46. The Trustee has been advised by intellectual property counsel that the patents held by Ellipso's subsidiaries ESBH and Virtual Geo may be worth as much as $2 million.

4. On October 8, 2010, MCHI, ESBH and Virtual Geo filed petitions for relief in this Court under Chapter 11 of the US Bankruptcy Code. See Chapter 11 Case No. 10-01003, Chapter 11

---

[1] John Page was listed as an officer (Vice President) in the petition but has since been terminated by Ellipso.
[2] AirStellar, Inc. ("AirStellar") owns the other 80% interest in MCHI. Ellipso owns a 100% interest in AirStellar.
[3] Ellipso has a contract with Verizon for resale of Verizon VoIP services which provides minimal on-going revenues as disclosed in the monthly operating reports filed in the Ellipso case.

Case No. 10-01000 and Chapter 11 Case No. 10-01001. According to the Statements of Financial Affairs, MCHI, ESBH and Virtual Geo are not currently engaged in any business operations and did not realize any income in 2008, 2009 or 2010. See DE 1, 1 and 1.

5. MCHI was formed in 1990 to provide mobile satellite services. See Ellipso's Disclosure Statement, DE 234 at p. 2. Also in 1990, MCHI (through its then-owned subsidiary Ellipsat Corporation) filed an application requesting authorization to construct and deploy the Ellipso satellite system. MCHI received a license for this system in 1997. Id. Ellipso was incorporated in 1998 following a restructuring of MCHI, which became a subsidiary of Ellipso and AirStellar, another wholly-owned subsidiary of Ellipso. Id. The officers and directors of MCHI are David Castiel (President, Secretary, and Director), Gerald B. Helman (Vice President), and Richard Burt (Director).

6. ESBH is the wholly owned subsidiary of MCHI. ESBH's only assets consist of 12 US patents for satellite systems and related technology. See ESBH"s Schedules of Assets and Liabilities, DE 1. ESBH's officers and directors are David Castiel (President, Secretary and Director) and Gerald B. Helman (Vice President). MCHI and ESBH have filed their corporate tax returns as part of Debtor's consolidated tax return filing every year through 2008.

7. In addition to the Ellipso satellite system to be operated by MCHI, Ellipso formed Virtual Geo in 1998 to pursue an FCC license to build and operate the Virtual Geosatellite system and technology. See Ellipso's Disclosure Statement at p. 2. Virtual Geo's principal assets include 10 US patents for satellite systems and related technology. See Virtual Geo's Schedules of Assets and Liabilities at DE 1. Virtual Geo's officers and managers are David Castiel (President, Secretary and Manager) and Gerald Helman (Manager).

8. MCHI's creditors consist of Ellipso (claim for inter-company loans and advances in the

3

scheduled amount of $10,200,005.00); John Draim (judgment in the scheduled amount of $93,518.89); and Lerman Senter PLLC (contested claim for legal services in the scheduled amount of $233,638.00). See MCHI's Schedules of Assets and Liabilities, DE 1. Lerman Senter also has the same claim against Ellipso as a guarantor of its claim against MCHI. MCHI is a defendant in the District Court case No. 1:09-cv-02137 described in par. 9 below.

9. In November 2009, John Mann, Mann Technologies, LLC, The Registry Solutions Co. and Robert Patterson filed a lawsuit in the U.S. District Court for the District of Columbia (Case No. 1:09-cv-02137-RCL) seeking monetary damages, and other relief, in the amount of $40,000,000.00 ("RICO Complaint") against thirty-three defendants including MCHI, ESBH and Virtual Geo. This suit was dismissed, without prejudice, on August 3, 2010 (Case No. 1:09-cv-02137-RCL at DE 17 and DE 18). Plaintiffs have filed a notice of appeal with respect to the dismissal. The same RICO Complaint was filed with this Court by the plaintiffs as claims against Ellipso. Of the 28 counts alleged by the plaintiffs, 23 have been dismissed by this Court and the remaining counts are subject to objections currently pending in the Ellipso case.

10. ESBH's sole creditor is Ellipso (claim for inter-company loans and advances in the scheduled amount of $233,638.00). ESBH is also a defendant in District Court Case No. 1:09-cv-09-2137 as described in par. 9 above.

11. Virtual Geo's creditors consist of Ellipso (claim for inter-company loans and advances in the scheduled amount of $4,732,235.00); Lerman Senter PLLC (contested claim for legal services in the scheduled amount of $2,800,527.00); and Telecomm Strategies (claim for consulting services in the scheduled amount of $48,000.00). Virtual Geo is also a defendant in the District Court Case No. 1:09-cv-09-2137 as described in par. 9 above. Lerman Senter also holds the same claim against Ellipso as a guarantor of its claim against Virtual Geo.

12. Ellipso was formed in January 1998 to become the operating company for the communications system. At the same time, MCHI was structured as an Ellipso subsidiary serving thereafter solely as a licensing entity.

13. Virtual Geo was also formed in 1998 to serve as a licensing entity for a new broadband system. As with MCHI, Ellipso became the operating company for Virtual Geo performing all administrative functions for it.

14. Until early 2001, MCHI, Virtual Geo and Ellipso generally had no debts other than operating expenses. Ellipso and its subsidiaries MCHI, Virtual Geo, and ESBH, although separate legal entities, have generally operated as if they were consolidated during the period covered by the creditors' claims. Ellipso was the operating entity and performed all administrative and operational functions for both itself and its subsidiaries. Ellipso held all bank accounts in its name, paid the employees and contractors of itself and the subsidiaries, and paid all firms and individuals rendering services to itself and the subsidiaries.

15. The subsidiaries had most of the same officers as the parent Ellipso and held the most valuable assets, over 20 patents, but were not operating entities during the period covered by the claims against Ellipso and its subsidiaries. The subsidiaries had no bank accounts in their name or funds of their own, generally did not contract directly with firms to provide them services, and did not pay firms that provided services for them. All tax and financial accounting for the subsidiaries was handled by Ellipso and maintained on a consolidated basis.

Legal Argument

16. Based upon the interrelationship of corporate and business operations between the Ellipso, MCHI, ESBH and Virtual Geo, the Trustee seeks to consolidate these estates for purposes of bankruptcy administration. Bankruptcy courts have traditionally regarded substantive consolidation as an equitable remedy, used sparingly in order to avoid unfair treatment to creditors. See In re Southern Terrace, L.P.; Barnaby Gardens, L.P., 1998 Bankr. Lexis 1975 (Bankr. D.C. 1998). Nonetheless, with the increasing use of interrelated corporate subsidiaries operating under a parent company's corporate umbrella, courts have been more inclined to authorize substantive consolidation. See In re Affiliated Foods, Inc., 249 B.R. 770 (Bankr. W.D. Mo. 2000). Indeed, the facts and circumstances of these cases dictate that the estates of the subsidiaries be consolidated with the parent company in order to protect the creditors' interests. Moreover, the consolidation must take place now in order to avoid significant diminution in the value of the assets of these estates.

17. As explained more fully above, Ellipso's only assets consist of the ownership interests in its subsidiaries, MCHI, ESBH and Virtual Geo. The subsidiaries hold title to patents for the satellite technology operated and marketed by Ellipso. However, the patents must be maintained with the US Patent and Trademark Office, in order to preserve their value, and the subsidiaries have no operating capital for this purpose. Consequently, Ellipso must continue to manage the patents in order to preserve their value for the benefit of all creditors. The consolidation of these estates, therefore, is necessary to protect the creditors' interests.

18. In the Southern Terrace case, this Court cautioned against the substantive consolidation of separate estates because of the possibility of unfair treatment of creditors who may have dealt

6

with a corporate debtor without knowledge of its interrelationship with other entities. See In re Southern Terrace, L.P.; Barnaby Gardens, L.P., 1998 Bankr. Lexis 1975 at 1. The two critical factors identified in addressing a request for substantive consolidation were: (1) whether creditors dealt with the entities as a single economic unit, or (2) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors. Id. at 3. Unlike the debtors in Southern Terrace, both factors are present with respect to the business operations of Ellipso and its subsidiaries. Ellipso served as the operating company for the entire communications satellite system and operated the business of its subsidiaries as a single economic unit. The subsidiaries had no bank accounts in their name or funds of their own and firms performing work for the subsidiaries generally looked to Ellipso for instructions as to the work to be performed and the payment for services rendered. Indeed the affairs of Ellipso and its subsidiaries were so entangled that the consolidation of the assets of the entities is essential to the fair and equitable treatment of all creditors' claim.

19.     Despite the historical use of substantive consolidation as a limited equitable remedy, the current trend is to consolidate estates when the pooling of the assets of the entities works to benefit creditors. The U.S. Bankruptcy Court for the Southern District of New York described the current trend as the process of "... pooling ... multiple entities' assets and claims, [to] allow those entities to satisfy their liabilities from a common fund, to eliminate inter-company claims, and to combine the entities creditors for purposes of voting on reorganization plans." In re Source Enterprises, Inc., 392 B.R. 541, 552 (Bankr S.D.N.Y. 2008). Citing the Second Circuit's decision in Union Savings Bank v. Augie/Restivo Banking Co., Ltd., 860 F.2d 515 (2d Circuit 1988), the court identified the same two critical factors in assessing the consolidation of separate estates. Id. The record in these cases reflects that the creditors looked to Ellipso and its

subsidiaries as a single economic unit. See DE 1, 1, and 1. The activities of the subsidiaries were managed and controlled by Ellipso. The officers and directors of Ellipso and its subsidiaries are substantially identical. The names of the entities were used interchangeably, and the creditors generally knew that the companies were operated as a single business enterprise. Moreover, the consolidation of these estates will result in the elimination of $15,165,878 in inter-company loans.

20.     In Drexel Burnham, the New York Bankruptcy Court listed numerous factual considerations as key to a determination of whether the interrelationship between entities warrants substantive consolidation, including: (a) the sharing of overhead, management, accounting and other related expenses among different corporate entities; (b) the existence of intercompany guaranties on loans; (c) parent paying salaries of employees of subsidiaries; (d) subsidiaries with grossly inadequate capital; (e) the use of consolidated financial statements; (f) the parent owning all or a majority of the stock of a subsidiary; (g) the parent and subsidiaries having common directors or officers; and (h) the parent and its subsidiaries acting from the same business location. See Drexel Burnham Lambert Group Inc., 138 B.R. 723, 763,764 (Bankr. SDNY 1992).

21.     The interrelationship between Ellipso and its subsidiaries is evident based upon the application of the Drexel Burnham factors. Ellipso, MCHI, ESBH and Virtual Geo share common officers and directors, while MCHI and ESBH have filed tax returns as part of Ellipso's consolidated return. MCHI, ESBH and Virtual Geo each received inter-company loans from Ellipso, which guaranteed loans to MCHI and Virtual Geo. Moreover, as the operating company, Ellipso regularly paid the salaries of employees and contractors for itself as well as the subsidiaries. In fact, the Ellipso subsidiaries had no bank accounts or capital of their own.

Ellipso and its fully owned subsidiary own 100% of the stock in MCHI, which in turn owns a 100 % interest in ESBH. Similarly, Ellipso owns a 100% interest in Virtual Geo. These factors demonstrate more than sufficient grounds to warrant the consolidation of these bankruptcy estates.

Wherefore, for all these reasons, the Trustee requests that this Court authorize the substantive consolidation of the Ellipso, MCHI, ESBH and Virtual Geo bankruptcy estates. Alternatively, the Trustee requests that the Court authorize the joint administration of these estates, pending the formulation of a joint plan of reorganization or sale of the assets of these debtors.

Respectfully submitted,

WEBSTER, FREDRICKSON, CORREIA & PUTH, PLLC

Dated: October 8, 2010    */s/ Natalie S. Walker*
Natalie S. Walker, Esq. #499276
1775 K Street, N.W., Suite 600
Washington, D.C. 20006
(202) 659-8510
Counsel to Chapter 11 Trustee for Ellipso, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of October 2010, a true and correct copy of the foregoing Trustee's Motion to Authorize Substantive Consolidation or in the Alternative Joint Administration of Cases and proposed order was mailed by first class, postage prepaid to:

Martha L. Davis, Esq.
Office of the United States Trustee
115 S. Union Street, Room 210
Alexandria, VA 22314

David Castiel
2831 44th Street NW
Washington, DC 20007

Ronald B. Patterson, Esq.
P.O. Box 1756
Alexandria, VA 22313

John B. Mann
9330 Harts Mill Road
Warrenton, VA 20186

Robert Patterson
9330 Harts Mill Road
Warrenton, VA 20186

Kermit A. Rosenberg, Esq.
Butzel Long Tighe Patton, PLLC
1747 Pennsylvania Ave., N.W., Third Floor
Washington, D.C. 20006-4604

/s/ *Natalie S. Walker*
Natalie S. Walker, Esq., #499276
1775 K Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 659-8510